## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No. 08-CV-2832 |
| Plaintiff, | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| **EUCLID CITY SCHOOL BOARD, et al.,** | : | **ORDER** |
| Defendants. | : | |

The parties before the Court have stipulated that Defendant Euclid City School Board (the "Board") has violated § 2 of the Voting Rights Act, as amended, 42 U.S.C. § 1973 ("§ 2").[1] It is uncontroverted that minorities in Euclid have been systematically denied the opportunity to elect their preferred candidates to the Board. So, too, the parties agree that the Board must be given an opportunity to propose a legally acceptable remedy for this past discrimination before this Court may consider alternatives. There, however, agreement ends: the parties suggest sharply different approaches to evaluating whether a remedy is "legally acceptable" and propose starkly different changes to the Board's electoral mechanism for selecting its membership.

The United States argues that a remedy is not legally acceptable unless it is reasonably expected to result in the election of minority-preferred candidates based on past minority voting patterns. In particular, the United States argues that a legally acceptable remedy is one that will

---

[1] The Court has found, in accordance with the parties' stipulation, that Defendant Euclid City School Board (the "Board") has violated § 2. That finding was set forth on the record of the May 19, 2009 remedial hearing in this case and, as promised then, will be confirmed in writing in the Court's forthcoming memorandum opinion.

necessarily result in roughly proportional representation, even if minority turnout is substantially lower than non-minority turnout.  Because the United States argues that the Board's proposed remedies (noted below) do not satisfy this standard, the United States argues, accordingly, that the Court should fashion an acceptable remedy of its own, which, it asserts, is one that would cease use of the Board's current at-large election system.  In particular, the United States has proposed that the Board be divided into five single-member districts, with one of these single-member districts designed so as to contain a large enough African-American population to ensure the election of an African-American candidate.

The Board, for its part, counters that a legally acceptable remedy need only provide the opportunity for meaningful participation.  The Board asserts that historical turnout patterns are of no moment, and argues that a remedy is legally acceptable even when it requires that minority turnout increase substantially from historical norms for minorities to achieve actual representation in the political process.  They argue that a plan is legally acceptable so long as it would provide representation were minorities to vote at the same rate as non-minorities.  To that end, the Board proposes two different possible systems: cumulative and limited voting.

First, the Board proposes "cumulative voting."  In cumulative voting, voters would have three votes in the 2009 election, but would be able to aggregate those votes if they wished.  In cumulative voting:

> Voters receive as many votes to cast as there are seats to fill; voters then may distribute these multiple votes among minority candidates in any way they prefer. Thus, voters may "plump" all their votes on one candidate – the strategy of choice for minority groups with intense preferences for a particular candidate – or give one vote each to several candidates.  If five seats on a city council are to be filled, voters would have five votes each to distribute as they saw fit.

Richard Pildes & Kristen Donoghue, *Cumulative Voting in the United States*, 1995 U. Chi. Legal F. 241, 254 (1995).

2

Second, the Board proposes limited voting.  Under the Board's limited voting proposal, each voter would be able to vote for a single candidate in school board elections, even though multiple seats are vacant every two years.  For example, during the 2009 elections, every voter would vote for a single Board member, although three members would be elected.

The Court also heard argument and testimony from the Cuyahoga County Board of Elections (the "County"), which will be responsible for implementing any remedy.  The County argued that it would have difficulty implementing the Board's cumulative voting proposal, but not the limited voting proposal or the United States' single-member district proposal.  The County further asked that, whatever the proposed remedy, the County be informed of this Court's decision by June 29, 2009, to ensure ample time to prepare for the fall elections.

After careful consideration, while, for reasons that will be explained in detail in the Court's forthcoming memorandum opinion in this matter, the Court ultimately rejects both parties' legal theories, it orders implementation of one of the Board's alternative remedies: limited voting.  The Court issues this summary order now to accommodate the concerns expressed by the Board of Elections and to provide the parties with guidance as to how to prepare for this fall's upcoming Board elections.  The Court will explain the full rationale for reaching this result in the opinion that will issue shortly.

In sum, the Court finds the Board's suggestion that the Court ignore historical turnout rates in its evaluation of a proposed remedy under § 2 unpersuasive.  Minority voters in Euclid have historically turned out to vote at only a fraction of the rate of non-minorities, in part due to the longstanding absence of a meaningful opportunity to participate in the political process.  A legally acceptable plan must accommodate this reality; a remedial plan cannot ignore historical reduced minority turnout resulting from the very discriminatory practices that violated the Voting Rights Act in the first instance.  This Court also finds, however, that the United States is

3

mistaken as well.  The province of a court is to ensure genuine opportunity for all citizens, not to guarantee particular electoral results.  Applying what it believes to be an appropriate and considered approach to the remedial analysis required in this context, the Court concludes that the Board's limited voting proposal is an acceptable and appropriate remedy for the § 2 violation at issue here.  Thus, the Court concludes that the **DEFENDANT** has proposed a legally acceptable remedy and **ORDERS** the Board and the Cuyahoga County Board of Elections to implement the **LIMITED VOTING** proposal, as described in the Board's briefing on this matter.

    **IT IS SO ORDERED.**

                                                **s/Kathleen M. O'Malley**
                                                **KATHLEEN McDONALD O'MALLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**Dated: June 29, 2009**